IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:13-cr-25(4) |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Denying Second Motion for |
| Brien Champion, | : | Reconsideration of the Emergency |
| | : | Motion for Compassionate Release |
| Defendant. | : | |

Defendant Brien Champion's Second Motion for Reconsideration of the Emergency

Motion for Compassionate Release is pending before the Court. (Doc. 776.) Champion

primarily argues that the Court should grant him compassionate release from prison because his

medical conditions put him at greater risk for severe illness from the COVID-19 virus. The

Court denied Champion's requests for compassionate release on two prior occasions. Now, for

the first time, Champion has filed his prison medical records documenting his medical conditions

and his personal COVID-19 history. Despite this evidence, the Court still concludes that

Champion is not entitled to compassionate release.

## I.     PROCEDURAL BACKGROUND

Champion pled guilty to conspiracy to possess heroin and crack cocaine

with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 846. (Doc.

75 at PageID 369; Doc. 267 at PageID8 871.) He admitted to conspiring with nineteen co-

defendants to distribute 1,000 or more grams of heroin and 280 grams or more of crack cocaine

between April 2012 and March 2013. (Doc. 269 at PageID 882.) He further admitted that he

personally distributed heroin within 1,000 feet of a school and/or public playground, directed

narcotics transactions, and transported both narcotics and drug proceeds. (*Id.* at PageID 884.)

On December 2, 2014, the Court sentenced Champion to 155 months of incarceration followed by seven years of supervised release. (Doc. 457 at PageID 1367–1368.) He currently is incarcerated at FCI Fort Dix and has an estimated release date of July 22, 2024. Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last viewed 3/14/2022).

On April 28, 2020—approximately one month into the COVID-19 pandemic—Champion filed a *pro se* Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 686.) The Court denied the Motion because Champion had failed to exhaust the available administrative remedies. (Doc. 688.) Champion then exhausted his administrative remedies and moved for reconsideration. (Doc. 692.) In an Order dated March 24, 2021, the Court again denied him compassionate release because he failed to support his arguments with evidence. (Doc. 719.)

Champion now purports to cure these deficiencies in the Second Motion for Reconsideration by filing his prison medical records and letters of support from members of the community. (Doc. 776.) A court-appointed attorney has filed a Supplemental Memorandum in support. (Doc. 784.) The Government did not file a response in opposition.

## II.    STANDARD OF LAW

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking sentence reduction bears the burden of proving entitlement to

compassionate release. *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at

*1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed
> except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon
> motion of the defendant after the defendant has fully exhausted all administrative
> rights to appeal a failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by
> the warden of the defendant's facility, whichever is earlier, may reduce the term
> of imprisonment (and may impose a term of probation or supervised release with
> or without conditions that does not exceed the unserved portion of the original
> term of imprisonment), after considering the factors set forth in [18 U.S.C. §]
> 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that
> such a reduction is consistent with applicable policy statements issued by the
> Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

When, as here, the defendant has exhausted administrative remedies, the district court

must (1) determine whether "extraordinary and compelling reasons" warrant a reduction and

(2) weigh the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d

1098, 1101, 1108 (6th Cir. 2020).[1] "Congress did not define what constitutes an 'extraordinary

and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be

considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561

(6th Cir. 2021) (quoting 28 U.S.C. § 994(t)). Courts generally have discretion to define what

constitutes "extraordinary and compelling" reasons. *Id.* at 562. Nonetheless, the Sixth Circuit

has defined two restrictions on that discretion:

---

[1] The Sixth Circuit determined in *Jones* that the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—is inapplicable to cases filed by federal inmates. 980 F.3d at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. 2021).

> First, non-retroactive changes in the law, whether alone or in combination with other personal factors, are not "extraordinary and compelling reasons" for a sentence reduction. Second, facts that existed when the defendant was sentenced cannot later be construed as "extraordinary and compelling" justifications for a sentence reduction.

*Id.*[2]

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553.

## III. ANALYSIS

Champion suffers from a congenital heart defect called tetralogy of Fallot. According to the Centers for Disease Control and Prevention ("CDC"), tetralogy of Fallot is a combination of congenital heart defects that "can cause oxygen in the blood that flows to the rest of the body to be reduced." CDC, *Congenital Heart Defects (Chds), Facts about Tetralogy of Fallot,* https://www.cdc.gov/ncbddd/heartdefects/tetralogyoffallot.html (last accessed 3/14/2022). It is treated surgically, and some people have little or no disability while others may develop related health problems over time. *Id.* Champion's prison records show that his condition was surgically "repaired" at the age of four, but he currently suffers from a ventricular septal defect and is at above average risk for endocarditis. (Doc. 776-1 at PageID 3044–3048, 3054, 3076.) The records also suggest that he suffers from asthma, prediabetes, and a cardiac murmur. (*Id.* at PageID 3030–3031.) The CDC advises that moderate-to-severe asthma and some heart

---

[2] The first *Hunter* restriction currently is the subject of dispute among different panels of the Sixth Circuit Court of Appeals. *Compare United States v. McCall,* 20 F.4th 1108 (6th Cir. 2021) (distinguishing *Hunter*), *petition for rehearing en banc filed* (Feb. 1, 2022), *and United States v. McKinnie,* 24 F.4th 583, 588–589 (6th Cir. 2022) (following *Hunter*).

conditions are among the underlying conditions that can make a person more likely to get very sick from COVID-19. CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed 3/14/2022).

Here, however, the Court need not merely speculate about the risk Champion faces from COVID-19. Champion tested positive for COVID-19 on March 25, 2021 and suffered from fatigue. (Doc. 776-1 at PageID 3031, 3059, 3064.) The medical records indicate that he had recovered from COVID-19 by April 4, 2021. (*Id.* at 3031.) Moreover, after his recovery, Champion received his primary Pfizer-BioNTech vaccination series on September 28, 2021 and October 18, 2021.[3] (*Id.* at PageID 3069.) The Bureau of Prisons has completed more than 2,600 inmate inoculations at FCI Fort Dix. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last viewed 3/14/2022).[4]

Prisoners who have contracted COVID-19 and recovered ordinarily cannot rely on COVID-19 to establish an extraordinary and compelling basis for compassionate release. *See, e.g., United States v. Mackety*, 854 F. App'x 36, 38–39 (6th Cir. 2021); *United States v. Littles*, No. 15-20317, 2020 WL 4346962, at *1, 4 (E.D. Mich. July 29, 2020) (denying compassionate

---

[3] The CDC defines two doses of Pfizer-BioNTech vaccine given three weeks apart as the completion of a primary vaccination series for most adults. CDC, *Frequently Asked Questions about COVID-19 Vaccination*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (last viewed 3/14/2022). It recommends the following in regard to booster shots:

> Scientists are continuing to monitor how long COVID-19 vaccine protection lasts. Recent studies show that protection against the virus may decrease over time. This reduction in protection has led CDC to recommend that everyone ages 12 years and older get a booster shot after completing their primary vaccination series.
>
> People who received the Pfizer-BioNTech or Moderna COVID-19 vaccine for their primary series should get a booster shot at least 5 months after completing the primary series.

*Id.*

[4] The prison currently houses 3,281 inmates. Federal Bureau of Prisons, FCI Fort Dix, https://www.bop.gov/locations/institutions/ftd/ (last viewed 3/14/2022).

release to an immunocompromised inmate who had COVID-19 and recovered); *United States v. Clark*, No. 3:09-CR-CRS, 2020 WL 3977652, at *4 (W.D. Ky. July 14, 2020) (denying compassionate release to prisoner with urinary/prostate issue who recovered from COVID-19). The *Mackety* case is instructive. Mackety had several medical conditions which put him at risk for severe illness from COVID-19, but no evidence in the record demonstrated that the prison had been unable to manage his medical needs. 854 F. App'x at 38. Mackety also contracted COVID-19 and recovered without complications. *Id.* The Sixth Circuit concluded that the district court had not erred in finding that Mackety had not established an extraordinary and compelling basis for release. *Id.*

Additionally, the widespread availability of vaccinations in prison makes it increasingly unlikely that COVID-19 can present an extraordinary and compelling reason for sentence reductions. The Sixth Circuit has explained:

> [W]e agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19.

*United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); *see also United States v. McKinnie*, 24 F.4th 583, 588–589 (6th Cir. 2022) (following *Lemons* and affirming denial of compassionate release motion to a fully vaccinated inmate with hypertension and obesity); *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (following *Lemons* to deny compassionate release to an inmate with serious health conditions who was fully vaccinated).

While the Court is sympathetic to Champion, he has not established that the Bureau of Prisons has been unable to provide him with adequate medical care. His medical records suggest that he has received consistent medical monitoring and treatment for his underlying medical conditions during his incarceration. Champion's risk for serious illness from COVID-19 or another virus cannot be eliminated completely, whether he is incarcerated or not. His risk, however, has diminished because of the vaccines. The Court concludes that COVID-19, even in combination with Champion's serious medical conditions, does not present an extraordinary and compelling basis for granting him compassionate release.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court will **DENY** Champion's Second Motion for Reconsideration of the Emergency Motion for Compassionate Release. (Doc. 776).

**IT IS SO ORDERED.**

BY THE COURT:

Susan J. Dlott
United States District Judge

---

[5] The Court need not conduct the § 3553 analysis given this holding. *See United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

J:\Lawclerks\Fechtel\1-Criminal Cases\Champion, B--Order 3582 COVID.doc